Charles H. HANSEN, Respondent,

v.

JER HER BUILDERS and General Accident Group, Relators.

No. C3–84–1040.

Supreme Court of Minnesota.

April 26, 1985.

Mary Rice, Graham Heikes, St. Paul, for appellants.

Michael D. Miller, Minneapolis, for respondent.

SIMONETT, Justice.

The employer, Jer Her Builders, and its insurer, General Accident Group, seek review of a decision of the Workers' Compensation Court of Appeals awarding the employee 15% permanent partial disability to the head, notwithstanding a prior award based on a settlement stipulation for 13% permanent partial disability "to the visual field or the body as a whole." We affirm in part, reverse in part, and remand.

Employee Charles H. Hansen, a carpenter, was struck on the left side of his face by an iron pipe on April 2, 1979, and sustained comminuted fractures of his left malar bone, left zygomatic arch, and the floor of the left orbit. Hansen was paid benefits for temporary total disability and after medical treatment returned to work in early May 1979. In 1981 he consulted an

attorney, Robert R. Johnson, about obtaining compensation for permanent partial disability. Johnson first referred the employee to Dr. James Diehl, a plastic surgeon, who examined employee on September 24, 1981. The employee told Dr. Diehl that his left eye felt "stretched open," his left cheek and upper lip felt numb, and his cheek was sensitive and ached after brief exposure to cold. He also complained of decreased hearing ability in his left ear. Dr. Diehl found that the employee had a conspicuous depression in his cheek and that his eye was displaced downward. In a report to attorney Johnson dated October 1, 1981, Dr. Diehl expressed the opinion that the employee had "a 15% permanent partial disability to his person or body as a whole" due to his work-related injuries. On October 20, 1981, responding to the attorney's request for clarification, Dr. Diehl wrote a short letter stating that Hansen had "a 15 per cent permanent partial disability to his head."

Attorney Johnson then had Hansen examined by Dr. Frederick Wippermann, an opthalmologist. Dr. Wippermann concluded the employee had suffered some damage to his left inferior orbital nerve with adhesions to the orbital floor, which impaired the employee's ability to raise his eye and caused double vision when he looked upward, resulting in 30% ocular motility disability. The doctor converted these findings to an 8% impairment of the visual system, to which the doctor added an additional 5% based on employee's loss of some tearing ability, numbness in his left cheek, an odd sensation in his eyeball, and increased sensitivity to light. Dr. Wippermann then equated this 13% impairment of the visual system with a 13% permanent partial disability of the body as a whole.

In February 1982, attorney Johnson filed a claim petition alleging that the employee was entitled to compensation for "Permanent Partial 13% of the visual field or the body as a whole." Subsequently, Johnson negotiated a settlement of the claim with the insurer's adjuster, Richard Eberius, who had been furnished copies of the reports of both doctors. The settlement, drafted by Johnson, contained no reference to scheduled permanent partial disabilities set forth in Minn.Stat. § 176.101, subd. 3 (1978), the applicable statute, but instead set forth that the employee had sustained an injury "in the nature of an injury to the eyes" and that he claimed to have sustained "permanent partial disability of 13% of the visual field or the body as a whole"; that the employer-insurer denied this claim, but desired to "settle their differences" and agreed to pay employee "10% of the body as a whole at a rate of $209 per week for a total sum of $10,450," plus expenses incurred for Dr. Wippermann's evaluation, and reimbursement of some of employee's attorney fees. Finally, the stipulation provided that employee accepted payment "with the understanding [that] it will constitute a full, final and complete settlement of any and all claims the Employee has for permanent partial disability to the extent of 13% of the visual field or the body as a whole," but that "all other claims are left open." The parties waived a formal hearing and the compensation judge approved the settlement, issued an award pursuant to its terms, and dismissed employee's claim petition in an order filed July 19, 1982. Throughout these proceedings, the employer-insurer was not represented by counsel, the adjuster handling all the negotiations.

Six weeks later, the employee filed a second petition, the petition involved in this proceeding, seeking additional benefits for 15% permanent partial disability of the head, based on Dr. Diehl's letter of October 20, 1981. The employer-insurer denied liability, alleging the prior settlement had been a compromise of all permanent partial disability arising out of the April 2, 1979, injuries. In their answer to the second petition, the employer-insurer, having now retained counsel, alternatively alleged that the prior settlement should be rescinded on the basis of mistake or fraud, or, at the very least, that they should be given credit for the prior award paid the employee.

At the hearing on the second petition, employee Hansen testified to the informa-

tion he had given the doctors, namely, that he saw double if he looked upward, his eye felt dry, stretched, and sensitive to light, his hearing was impaired in the left ear, and he had a constant dull ache through his cheekbone to the ear. Hansen also said his cheek pain became severe upon exposure to cold weather. The doctors testified by deposition. Dr. Diehl said that he had based his rating on functional loss, objective findings, and the employee's complaints. Dr. Diehl had not taken into consideration employee's double vision, but he said he had considered the complaint about a stretching sensation in the eye and he had also considered the downward displacement of the eye. Dr. Diehl further testified that a plastic surgeon does not have a distinct set of standards for rating disability and that he considered his initial 15% permanent partial disability rating to the body as a whole to be the equivalent of a 15% permanent partial disability of the head. Dr. Wippermann, the opthalmologist, testified that he did not consider the depression in employee's cheek in rating permanency, but felt the employee's loss of left eye motility accounted for 8% disability and the decreased tear flow and the sensation disturbance of the eye and cheek accounted for another 5%. Mr. Eberius, the adjuster who had negotiated the prior settlement, testified that it was the insurer's policy to conclude a claim entirely when entering a settlement. He was not permitted to testify to his understanding of .what the settlement accomplished in this case nor that Johnson had not said that the employee might later pursue another claim for permanent partial disability resulting from the work injuries.

On this record, the compensation judge found that employee Hansen had sustained 5% permanent partial disability to the head but was not entitled to compensation because this impairment did not affect employability.

On appeal by the employee, the court of appeals unanimously reversed the compensation judge's finding of 5% noncompensable disability to the head. A majority of the court substituted its own finding that

the employee had sustained a 15% permanent partial disability to the head, which was compensable because the employee's sensitivity to cold weather affected his employability. All members of the court agreed that the prior settlement purported to settle disability claims not included within the permanent partial disability schedule of the statute. A majority of the court, however, felt they could not disturb the prior award on settlement because neither party had sought to do so. The dissenting judges, on the other hand, felt they were not precluded from reviewing the meaning of the prior settlement and contended the case should be remanded to receive evidence on any overlap in the disability ratings given by the two doctors and to allow the employer-insurer a credit for compensation paid under the settlement. The net result of the Workers' Compensation Court of Appeals decision is that the employee receives both the 10% settlement award and an additional 15% permanent partial disability award for the head injury.

In this court the employer-insurer again urge that the settlement forecloses the employee from asserting his present claim for permanent partial disability of the head or, at most, allows him to obtain additional permanent partial disability of only 2%, the difference between Dr. Diehl's 15% rating and Dr. Wippermann's 13% rating. They also contend that the employee should be barred from asserting the present claim on public policy grounds. Finally, the employer-insurer contend that the compensation judge's finding of a 5% noncompensable permanent partial disability had substantial evidentiary support and should be reinstated. Employee responds that this proceeding relates only to his claim for permanent partial disability of the head; that the majority of the Court of Appeals correctly applied our recent decision of *Buganski v. Onan Corp.*, 338 N.W.2d 586 (Minn.1983), in ignoring the prior settlement and award; that the compensation judge's finding was manifestly contrary to the evidence; and that the Court of Appeals' finding of a 15%

permanent partial disability to the head has substantial evidentiary support.

■ We must reject the employer-insurer's claim that the award on stipulation forecloses employee's present claim. The settlement stipulation, while ambiguous, contains no reference to any permanent partial disability to the head. Only the report of Dr. Wippermann was made a part of the stipulation. Dr. Diehl's report was omitted. Because no disability listed in the applicable statute, Minn.Stat. § 176.101, subd. 3 (1978), was described in the settlement, all the settlement really determines is that the employee was awarded 50 weeks of compensation for a "10% permanent partial disability of the body as a whole" and that the settlement resolved only those claims of the employee set out in Dr. Wippermann's report.

■ We also reject the claim that this proceeding should be barred as violating public policy. In our opinion, seeking a piecemeal recovery for known permanent partial disability may indeed be a misuse of the workers' compensation system. Yet, even if this might be so, to bar the employee from seeking compensation to which he may be entitled seems too great a penalty. If the employer-insurer are not satisfied with the remand hereinafter provided, they remain free to petition for vacation of the award on settlement pursuant to Minn.Stat. §§ 176.461 and 176.521, subd. 3 (1984).

■ We further hold that the Court of Appeals did not err in concluding that the compensation judge's finding of a 5% permanent partial disability which did not interfere with employability was not supported by substantial evidence. Employee's testimony about the effects of his injury and Dr. Diehl's testimony afford substantial evidentiary support for the substituted finding that employee sustained a 15% permanent partial disability of the head.[1]

■ The next issue is whether *Buganski* requires the Court of Appeals to award compensation for the entire 15% permanent partial disability of the head. We agree with the dissenting judges that it does not. In *Buganski*, the parties had stipulated to a settlement award of 10% permanent partial disability to an arm. Subsequently, on the basis of new medical information, the employee petitioned for additional compensation for permanent partial disability of his back. On this petition, the Court of Appeals found not only that the employee had injured his back but that he had not injured his arm and ordered that the compensation paid for the arm be credited against the compensation for 15% disability of the back. We reversed, pointing out that in the absence of any application to vacate the prior stipulated award, the Court of Appeals did not have jurisdiction to find no injury to the arm, a finding that was contrary to a fact agreed on in the parties' settlement. We remanded to determine the extent to which the employee's arm symptoms were reflected in the rating for the back disability so as to avoid any double compensation.[2]

This case is similar to *Buganski*. It is clear from the medical testimony of the two doctors here that awarding employee Hansen 15% permanent partial disability for his head based on Dr. Diehl's report would compensate the employee, at least in part, for disabilities for which he has already been compensated in the prior settle-

---

1. The compensation judge's application of the disfigurement provision, Minn.Stat. § 176.101, subd. 3(41) (1978), was also incorrect because that provision applies only to disfigurement "not resulting from the loss of a member or other injury specifically compensated," and in this case employee was found to have sustained permanent partial disability to his head, specifically compensated under section 176.101, subd. 3(39) (1978).

2. On remand in *Buganski*, the employer, instead of seeking to clarify the rating for the back disability, sought to vacate the prior award for the arm disability. We held that the employer had failed to show any of the grounds required under Minn.Stat. § 176.461 (1982) for vacation of the prior award and again remanded the case to determine to what extent the rating for the back disability included impairment of the arm. *See Buganski v. Onan Corp.*, 351 N.W.2d 637 (Minn.1984).

ment based on Dr. Wippermann's report. Absent any mistake or fraud, there is no need to vacate the prior settlement. It is enough for the trier of fact to consider the medical evidence and reduce the award for the head injury to the extent that Dr. Diehl's 15% rating includes complaints already covered in Dr. Wippermann's rating. This can be accomplished by a remand and without disturbing the prior settlement. Indeed, this is what *Buganski* requires.

Here both the opthalmologist, Dr. Wippermann, and the plastic surgeon, Dr. Diehl, were assessing the effects of the same injury and both took into account several of the same effects, namely, the downward placement of the eye and the numbness and sensory changes in the left cheek and left eye areas. There may be more. Justice requires that the award to the employee for permanent partial disability of the head cover only disability for which he has not been previously compensated. Consequently, we remand for further testimony about the weight each doctor gave these factors in making their ratings, a finding determining the extent to which the ratings represent the same impairment, and an award for permanent partial disability of the head reduced to compensate the employee for factors considered only by Dr. Diehl.

The petition for rehearing is otherwise denied, and attorney fees are not allowed to any party on the petition for rehearing.

Affirmed in part, reversed in part, and remanded.